IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CURTIS B. PEARSON and )
ROBERT C. PEARSON, )
)
Plaintiffs, )
)
v. )                    1:08CV919
)
GARDERE WYNNE SEWELL LLP )
and DAVID EARHART, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment filed by Gardere Wynne Sewell, LLP and David Earhart ("Defendants"), and a Motion for Partial Summary Judgment filed by Curtis B. Pearson and Robert C. Pearson ("Plaintiffs"). In considering these Motions, the Court notes that the claims in this case are related to the claims asserted by Plaintiffs in a prior action in this Court, Curtis B. Pearson Music Company, et al. v. McFadyen Music Company, et al., No. 1:04-CV-378 (M.D.N.C. July 28, 2008), aff'd, 368 Fed. Appx. 450 (4th Cir. 2010) ("the Prior Action"), as discussed below. For the reasons set out in this Memorandum Opinion, Defendants' Motion for Summary Judgment [Doc. #11] will be granted, Plaintiffs' Motion for Partial Summary Judgment [Doc. #14] will be denied, and this case will be dismissed.

## I.  FACTUAL BACKGROUND[1]

In June of 2000, Plaintiffs entered into negotiations with Brook Mays Music Company ("Brook Mays") regarding the purchase of Plaintiffs' business, Curtis B. Pearson Music Company ("Pearson Music").  The President of Brook Mays, William Everitt, was involved in the negotiations with Plaintiffs, and Brook Mays was represented in that matter by Defendant David Earhart, an attorney with the law firm of Defendant Gardere Wynne Sewell, LLP.  The sale of Pearson Music to Brook Mays was consummated by a Purchase Agreement, signed on August 7, 2000.  However, Plaintiffs subsequently filed suit against Brook Mays and William Everitt for breach of contract, fraud, and unfair and deceptive trade practices ("UDTP").  After Plaintiffs filed suit, Brook Mays declared bankruptcy, and the Court dismissed the claims against Brook Mays for breach of contract, fraud, and UDTP.[2]  In addition, because Mr. Everitt signed the Purchase Agreement solely in his capacity as President of Brook Mays, he was not a party

---

[1]  The Factual Background is set out based on the Findings of Fact and Conclusions of Law in Curtis B. Pearson Music Company, et al. v. McFadyen Music Company, et al., No. 1:04-CV-378 (M.D.N.C. July 28, 2008), aff'd, 368 Fed. Appx. 450 (4th Cir. 2010) ("the Prior Action").  In the present action, the parties do not challenge the Findings of Fact from the Prior Action.  In fact, Plaintiffs expressly state that their Complaint "is based on the undisputed facts as stated in this Court's Findings of Fact and Conclusions of Law." (Pls.' Reply 10).  Moreover, the Court notes that Plaintiffs had a "full and fair opportunity" to litigate the factual issues set forth in the Court's Findings of Fact, and therefore, in any event, Plaintiffs are bound by those facts under the principle of collateral estoppel.  See Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 434-35, 349 S.E.2d 552, 560 (1986).  However, to the extent that the parties dispute any factual issue newly raised in the present action, the Court will note those disputes throughout this Memorandum Opinion where applicable.

[2]  The Court notes that although the Court dismissed the claims against Brook Mays in light of its bankruptcy filing, the Court left open to Plaintiffs the option and ability to pursue any and all disputes against Brook Mays, as the contracting party in the purchase of Pearson Music, as a part of the Brook Mays bankruptcy proceedings.  It is unclear from the record in the present case whether Plaintiffs chose to pursue any such relief against Brook Mays.

to the contract, and no breach of contract claim remained against him. As such, the Prior Action proceeded only as to the claims of fraud and UDTP brought against Mr. Everitt individually. After conducting a bench trial, the Court concluded that, from the outset of the negotiations between Plaintiffs and Brook Mays, there existed a misunderstanding as to what terms would be included in the final Purchase Agreement. Mr. Everitt, as President of Brook Mays, understood that the Purchase Agreement would include a provision whereby Brook Mays would make installment payments totaling $600,000 to Plaintiffs, contingent on Plaintiffs' continued employment with Brook Mays. In contrast, Curtis Pearson understood that the Purchase Agreement would include a provision whereby the installment payments would be contingent only on Plaintiffs refraining from competition with Brook Mays for a period of time, but would be in no way tied to Plaintiffs' continued employment with Brook Mays.

The parties agree that, on July 6, 2000, Defendant Earhart, as counsel for Brook Mays, provided a draft of the Purchase Agreement to Plaintiffs and to Mr. Everitt. The July 6 draft reflected Curtis Pearson's understanding regarding the installment payments, and specified that the installment payments totaling $600,000 were contingent only on Plaintiffs abiding by the provisions of the non-compete clause. The July 6 draft agreement did not include any provision that made the installment payments contingent on Plaintiffs remaining employed at Brook Mays. As such, Curtis Pearson made only a few minor changes to the July 6 draft and thereafter returned it to Defendant Earhart. After Mr. Everitt reviewed the July 6 draft, based on his understanding of the agreement, he told Defendant Earhart to add language to the non-compete provision that would make the installment payments contingent on Plaintiffs remaining

employed with Brook Mays ("the Termination Contingency"). However, Defendant Earhart failed to include the Termination Contingency in the revised draft, which he sent to Plaintiffs on July 14, 2000. Therefore, like the July 6 draft, the July 14 draft reflected Curtis Pearson's understanding of the parties' agreement regarding the installment payments, and specified that the installment payments were contingent only on the non-compete provisions. The July 14 draft did not include any provision that made the installment payments contingent on Plaintiffs remaining employed at Brook Mays. Plaintiffs and their independent counsel reviewed the July 14 draft and Plaintiffs indicated their approval of the draft to Defendant Earhart. After reviewing the July 14 draft, Mr. Everitt again instructed Defendant Earhart to add the Termination Contingency to the Purchase Agreement. Thereafter, Defendant Earhart added the following language to the Purchase Agreement: "In addition, such payment obligations would terminate in the event such person [the Pearsons] ceases to be employed by [Brook Mays] . . . or in the event of such person's death." This sentence was added in the middle of a subparagraph that was otherwise identical to the July 14 draft approved by Plaintiffs. Mr. Everitt and Curtis Pearson subsequently engaged in several telephone conversations regarding the closing, valuation of assets, taking inventory, and minor changes to the July 14 draft.

At the closing, on August 7, 2000, Curtis Pearson asked Mr. Everitt, "Is this the contract we agreed to?" and Mr. Everitt responded, "Yes," on the belief that he had discussed the changes to the final version of the Purchase Agreement with Mr. Pearson over the phone and that he had faxed a copy of the final version for Mr. Pearson's review prior to the closing. In reliance on Mr. Everitt's statements regarding the Purchase Agreement, Plaintiffs signed the

agreement. Although Mr. Everitt believed he had informed Plaintiffs of the Termination Contingency, and that Plaintiffs had agreed to the contingency, Plaintiffs were not aware at closing that the Purchase Agreement contained any such provision. In 2002, Robert Pearson resigned, and Brook Mays informed Curtis Pearson that they also considered him to have "resigned." As a result, Brook Mays refused to make the annual installment payments for 2002 or for any year thereafter, leaving a balance due of $460,000, based on Plaintiffs' understanding of the agreement. It was only on April 22, 2002, after Brook Mays refused to make the 2002 installment payment, that Plaintiffs became aware of the Termination Contingency that had been added to the final version of the Purchase Agreement.

As part of the findings of fact in the Prior Action, and based on the Court's credibility determinations and consideration of the evidence, the Court found that Mr. Everitt did not intend to deceive Plaintiffs, and therefore Plaintiffs could not recover on their fraud claim. In addition, the Court found that the dealings between Mr. Everitt and Plaintiffs "were all part of an arms-length business transaction" and that Mr. Everitt "was not in a confidential, advisory, or otherwise close relationship" with Plaintiffs. (Findings of Fact and Conclusions of Law, Defs.' Resp. Ex. H, at 14-15). Therefore, the Court found that Plaintiffs had also failed to state a claim for constructive fraud or breach of fiduciary duty. Finally, the Court found that Mr. Everitt had not engaged in any intentional deception that would support a claim for UDTP, and that the evidence supported the conclusion that there was simply an honest misunderstanding between the parties regarding the terms of the Purchase Agreement. As such, the Court dismissed all claims brought by Plaintiffs against Mr. Everitt.

Based on the same factual record present in the Prior Action, Plaintiffs now bring tort claims against Defendant David Earhart, the attorney who represented Brook Mays in the purchase of Pearson Music, and who drafted the Purchase Agreement at issue in the Prior Action, and against Defendant Earhart's law firm, Defendant Gardere Wynne Sewell, LLP. Plaintiffs contend that, based on Defendants' agreement to represent Brook Mays in the purchase of Pearson Music, Defendants owed Plaintiffs a duty, sounding in tort, "to act in such a way that plaintiffs would not be injured." (Compl. ¶ 19). Plaintiffs contend that Defendants acted with the intent to deceive Plaintiffs by omitting the Termination Contingency from the first two drafts of the Purchase Agreement and then including the provision in the final version of the Purchase Agreement. In the alternative to such alleged intentional conduct, Plaintiffs contend that Defendants acted negligently by failing to carry out Mr. Everitt's instructions to add the Termination Contingency language in the Purchase Agreement drafts. Plaintiffs thus seek to hold Defendants liable to Plaintiffs, although Plaintiffs acknowledge that Defendants served as attorneys for the opposing side in an arms-length business transaction. Defendants deny all of Plaintiffs' claims, and both parties now seek summary judgment in their favor.[3]

---

[3] The Court notes that Defendants first contend that Plaintiffs' action is barred by the doctrine of judicial estoppel because Plaintiffs now assert an inconsistent position from that asserted in the Prior Action. Defendants contend that in the Prior Action, Plaintiffs asserted that they relied to their detriment on statements by Mr. Everitt, and in the present action Plaintiffs take the inconsistent position that it was Defendant Earhart who induced them to sign the Purchase Agreement. In determining whether a party's claim is barred by judicial estoppel, courts look to the following factors: "First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage. This bad faith

II.   ANALYSIS

A.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Zahodnick v. Int'l Bus. Machs. Corp.</u>, 135 F.3d 911, 913 (4th Cir. 1997).   The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1349, 89 L. Ed. 2d 538 (1986).  When making a summary judgment determination, the court must view the evidence and all justifiable inferences from the evidence in the light most favorable to the non-moving party.  <u>Zahodnick</u>, 135 F.3d at 913.   However, the party opposing summary judgment may not rest on mere allegations or denials, and the Court need not consider "unsupported assertions" or "self-serving opinions without objective corroboration."  <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

B.   Application to the Claims Asserted

---

requirement is the determinative factor."  <u>Whitten v. Fred's Inc.</u>, 601 F. 3d 231, 241 (4th Cir. 2010) (quotations omitted).  Even assuming, *arguendo*, that Plaintiffs assert an inconsistent position in the present case, the Court finds Plaintiffs' actions to not be in bad faith.  As such, the Court will address the merits of the case herein.

Plaintiffs bring somewhat novel claims in this case, attempting to hold opposing counsel liable for actions taken during an arms-length business transaction. However, the theory on which Plaintiffs base their claims is not entirely clear. In this regard, the Court notes that in their Complaint and initial Brief in support of their Motion for Partial Summary Judgment, Plaintiffs broadly characterize this action as one "sounding in tort." (Compl. ¶ 19; Pls.' Br. 1). Specifically, Plaintiffs state that "this is an action based on negligence, reckless conduct, and fraud." (Pls.' Br. 16; Pls.' Resp. 4). However, the Court notes that for the first time in their Reply Brief, Plaintiffs alter the characterization of this action and describe it as one based on "third-party beneficiary contract claims, sounding in tort."[4] (Pls.' Reply 1-2). Through this altered characterization, Plaintiffs appear to raise claims grounded in a doctrine purportedly combining contract and tort law, or grounded in contract and tort law separately. The Court will therefore consider in turn the viability of Plaintiffs' purported (1) "third party beneficiary contract claims, sounding in tort", (2) contract-based claims, and (3) tort-based claims.

1.    "Third-Party Beneficiary Contract Claims, Sounding in Tort"

The Court first notes that Plaintiffs reference a "third-party beneficiary contract and tort doctrine" multiple times in the later stages of their briefing of this action. (Pls.' Reply 7; Pls.' Resp. to Defs.' Mot. for Surreply 2). Plaintiffs contend that the cases cited throughout their briefing, namely United Leasing Corporation v. Miller, 45 N.C. App. 400, 263 S.E.2d 313 (1980),

---

[4] Plaintiffs' introduction of possible third-party beneficiary of contract claims in their Reply Brief spurred Defendants to file a Motion to file a Surreply to address any alleged contract-based issues. Court granted Defendants' Motion to file a Surreply and the Court has considered the substance of these issues as set out above.

and <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 322 N.C. 200, 367 S.E.2d 609 (1988),

provide support for this alleged doctrine, both as a general matter, and as it relates specifically

to this case. However, upon review of those cases, the Court concludes that those cases

recognized potential liability based either on contract law (including third-party beneficiary

liability) or tort law, but not a combination of the two. Ultimately, to the extent that those cases

found that liability could exist on the part of the defendants, such liability sounded in tort law

only. For example, in <u>United Leasing Corporation</u>, the plaintiff, a lessor of equipment, brought

an action against the defendant, the attorney for the lessee, alleging negligent failure to discover

the existence of a property lien. <u>United Leasing Corp.</u>, 45 N.C. App. at 407-08, 263 S.E.2d at

318. The North Carolina Court of Appeals noted that early North Carolina case law had found

that such a claim against an attorney could only sound in contract law based on privity between

the attorney and the client. <u>Id.</u> at 404, 263 S.E.2d at 316. However, the court further noted that

more recent cases had found that "a party not in direct privity of contract with an attorney could

recover if he could show that he was a third-party beneficiary of the attorney-client employment

contract." <u>Id.</u> at 405, 263 S.E.2d at 317. Although under the circumstances of the case, the

court found that the plaintiff could not state a claim based on the third-party beneficiary of

contract doctrine, <u>id.</u>, the court did not end its analysis at that point. Rather, the court found

it permissible under North Carolina law to extend liability beyond any privity of contract or

third-party beneficiary of contract relationship, and recognized "a cause of action in negligence

arising from the negligent breach of a common law duty of care flowing from the parties'

working relationship." <u>Id.</u> at 406, 263 S.E.2d at 317 (citations omitted). As such, the court

distinguished between third-party beneficiary of contract claims and tort claims, and thereafter allowed the plaintiff's claims to proceed under tort law, even where the plaintiff could not succeed under the third-party beneficiary of contract doctrine.

In addition to <u>United Leasing Corporation</u>, Plaintiffs cite <u>Raritan River Steel</u>, to support the existence and application to the present case of a "third-party beneficiary contract and tort doctrine." In <u>Raritan River Steel</u>, the plaintiffs, who were third-party creditors, brought an action against the defendant, an accountant, based on "two legal theories. The first is that defendants breached their contract . . . and plaintiffs may take advantage of the breach as third-party beneficiaries of the contract. The second theory is negligent misrepresentation." <u>Raritan River Steel</u>, 322 N.C. at 203, 367 S.E.2d at 611. The trial court granted the defendants' motions to dismiss all claims. <u>Id.</u> at 204, 367 S.E.2d at 611. The North Carolina Court of Appeals affirmed the dismissal of the third-party beneficiary of contract claims, but reversed as to the negligent misrepresentation claims. <u>Id.</u> Thereafter, the Supreme Court of North Carolina allowed discretionary review, but only as to the negligent misrepresentation claims. <u>Id.</u> As such, the court did not address the merits of a third-party beneficiary of contract claim, or any contract-based claim. Rather, the court analyzed only plaintiff's negligent misrepresentation claims, finding a basis for such a claim in the <u>Restatement (Second) of Torts</u> § 552 (1977). Nowhere in the opinion did the court discuss a "third-party beneficiary of contract and tort doctrine," nor can one be inferred by the court's analysis. Rather, the court referenced the two doctrines, contract and tort, as separate causes of action and analyzed the plaintiff's claims only under the tort doctrine of negligent misrepresentation.

To the extent that <u>United Leasing Corporation</u> and <u>Raritan River Steel</u> recognize the possibility of potential claims "sounding in tort," these potential claims are discussed in more detail below, with regard to Plaintiffs' tort claims. However, these cases simply do not provide any basis for asserting "third-party beneficiary contract claims, sounding in tort." Furthermore, an examination of North Carolina law shows that North Carolina courts make a distinction between third-party beneficiary claims and tort claims, rather than combining the two doctrines, as Plaintiffs have attempted to do in this case.[5] <u>See, e.g.</u>, <u>Handex of Carolinas, Inc. v. County of Haywood</u>, 168 N.C. App. 1, 9, 607 S.E.2d 25, 30 (2005) (noting that "where there is neither allegations of contractual privity, or that the plaintiff was an intended third-party beneficiary under the professional contract, that plaintiff's exclusive remedy against the professional sounds in tort" (citing <u>Leary v. N.C. Forest Prods., Inc.</u>, 157 N.C. App. 396, 404, 580 S.E.2d 1, 6 (2003))). Therefore, the Court concludes that to the extent that Plaintiffs contend that this action is based on a purported "third-party beneficiary of contract and tort doctrine," North Carolina courts would not recognize such a doctrine, and any claims brought under that doctrine would be without legal basis.

However, the Court notes that, rather than asserting the above-referenced combined contract-tort doctrine, Plaintiffs may instead be attempting to assert two separate claims, one

---

[5] The Court notes that Plaintiffs, citing to <u>United Leasing Corporation</u> in their initial Brief, expressly recognize this very distinction between third-party beneficiary of contract claims and tort claims, even though they attempt to combine the doctrines in their Reply. (Pls.' Br. 8 (setting forth the balancing test the Court should apply in determining whether "the law will impose upon [Defendants] an obligation, *sounding in tort and not in contract*, to act in a way that the other will not be injured" (emphasis added))).

based on the third-party beneficiary of contract doctrine, and one based on principles of tort law. Although Plaintiffs repeatedly characterize their action as "sounding in tort" throughout most of their briefing, in their opposition to Defendants' Motion for Surreply, Plaintiffs state that "[t]he third-party beneficiary contract doctrine is fully asserted in paragraphs 19-21 of the Complaint." (Pls.'s Resp. to Defs.' Mot. for Surreply 1). Paragraphs 19-21 of Plaintiffs' Complaint appear as follows:

> 19. When defendants entered into an agreement to represent Brook Mays in the acquisition of the assets of plaintiffs' company, defendants placed themselves in such a relation toward plaintiffs that the law imposed upon them an obligation, sounding in tort, to act in such a way that plaintiffs would not be injured.

> 20. Defendants knew that the transaction was intended to affect plaintiffs, individually, i.e., that they would both continue to be employed by Brook Mays and be paid the installment payments contingent on their continuing to be employed by Brook Mays in an "at will" arrangement; that said arrangement meant that Brook Mays could immediately terminate plaintiffs' employment and thereby terminate any obligation to continue to make installment payments.

> 21. Defendants' actions in failing to add the contingent payment provision were intentional and calculated to deceive plaintiffs; that plaintiffs reasonably relied upon defendants' prior drafts of the asset purchase agreement in executing the final agreement, and were damaged thereby.

Upon examination of the Complaint, including paragraphs 19-21, the Court notes that nowhere in the Complaint do Plaintiffs expressly mention a third-party beneficiary of contract claim. To the contrary, paragraph 19 of Plaintiffs' Complaint expressly states that the action is one "sounding in tort." However, in the interest of completeness, the Court will address Plaintiffs' claims under both contract and tort theories.

    2.   <u>Contract-Based Claims</u>

To the extent that Plaintiffs intend to assert a claim based on the third-party beneficiary

of contract doctrine, Plaintiffs are apparently contending that they are third-party beneficiaries to the professional services contract between Brook Mays and Defendants, pursuant to which Brook Mays retained Defendants, as its independent counsel, to represent Brook Mays in negotiations with Plaintiffs over the purchase of Pearson Music. Plaintiffs bear the burden of proving that they are third-party beneficiaries, and must show "(1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the plaintiff." Holshouser v. Shaner Hotel Group Props., One Ltd. Pshp., 134 N.C. App. 391, 400, 518 S.E.2d 17, 25 (1999). The third factor, which is most relevant to the present case, focuses on the intent of the contracting parties. "A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. It is not enough that the contract, in fact, benefits the plaintiff, if, when the contract was made, the contracting parties did not intend it to benefit the plaintiff directly. In determining the intent of the contracting parties, the court should consider the circumstances surrounding the transaction as well as the actual language of the contract." Id. (internal citations and quotations omitted).

Given this framework, the Court finds that to the extent that Plaintiffs intend to assert a third-party beneficiary of contract claim, Plaintiffs have failed to carry their burden as to factor three, which requires that "the contract was executed for the direct, and not incidental, benefit of the plaintiff." Plaintiffs have not submitted any evidence that the express language of the professional services contract between Brook Mays and its attorneys includes any express language indicating any intent to directly benefit Plaintiffs. In addition, neither the language of

the Complaint, nor the evidence in this case, would support a claim that at the time Defendants and Brook Mays entered into their professional services contract, whereby Defendants agreed to act as the independent counsel for Brook Mays during the purchase of Pearson Music, such a contract was intended for the direct benefit of Plaintiffs, as the opposing side in the transaction. The Court notes that in Curtis Pearson's own deposition,[6] he expressly acknowledged that Defendants represented the interests of Brook Mays only, and not the interests of Plaintiffs, in the purchase of Pearson Music. (Defs.' Br. Ex. A). Plaintiffs' position in the purchase of Pearson Music is much more readily characterized as the members of one side of an arms-length business transaction with Brook Mays, rather than as third-party beneficiaries to the professional services contract whereby Brook Mays retained their independent counsel. Although it may be true that the Defendants' representation of Brook Mays enabled the ultimate sale of Pearson Music, which did benefit Plaintiffs to some extent, as stated above "[i]t is not enough that the contract, in fact, benefits the plaintiff, if, when the contract was made, the contracting parties did not intend it to benefit the plaintiff directly." Holshouser, 134 N.C. App. at 400, 518 S.E.2d at 25. Based on all of the evidence before the Court, the Court concludes that Plaintiffs have failed to present evidence that would create a genuine issue of fact with respect to whether Plaintiffs were third-party beneficiaries of the professional services contract between

---

[6] The Court notes that parties in the present action did not engage in a discovery period specific to the present action prior to the filing of their respective Motions for summary judgment. Rather, both parties include in their briefing references to depositions and other documents taken during the course of the Prior Action. Neither party has objected to the use of such documents, and neither party asserts or suggests the need for further discovery in the present case. As such, the Court has considered all documents referenced in the parties' briefs as part of the summary judgment record.

Brook Mays and Defendants. Therefore, to the extent that Plaintiffs allege a third-party beneficiary of contract claim, Plaintiffs have failed to present sufficient evidence to establish an essential element of such a claim, and Defendants are entitled to summary judgment on this claim.

3.    Tort-Based Claims

Given the Court's conclusion that Plaintiffs have failed to show that any claims in this action could be properly based in contract law, either in whole or in part, the Court will now address the parties' contentions in this matter regarding Plaintiffs' claims "sounding in tort." Plaintiffs allege that Defendants owed them "an obligation, sounding in tort, to act in such a way that plaintiffs would not be injured," based on Defendants' agreement to represent Brook Mays in the purchase of Pearson Music. (Compl. ¶ 19). Beginning with the broad notion that this action "sounds in tort," Plaintiffs' briefing of the present Motions suggests that this action includes one or more claims based in fraud, negligence, and/or negligent misrepresentation. Plaintiffs' Complaint and early briefing suggests that Plaintiffs intended to raise independent claims of fraud and negligence as the bases for their action "sounding in tort." However, in their Reply Brief, Plaintiffs argue for the first time that their claims are not for negligence or fraud individually, but rather are for "negligent misrepresentation." (Pls.' Reply 10 ("While plaintiffs herein do not denominate their claims as 'negligent misrepresentation' claims, instead denominating them as 'negligence' claims and 'fraud' claims, they are in fact negligent misrepresentation claims.")). For completeness of this Memorandum Opinion, the Court will address all three possible tort-based claims. In doing so, the Court will first address Defendants'

arguments challenging the timeliness of Plaintiffs' tort claims under the applicable statute of limitations.

(a.)     Statute of Limitations Issues for Tort-Based Claims

Defendants contend that to the extent that Plaintiffs bring an independent negligence claim in this action, such a claim is for professional negligence, or attorney malpractice, and is therefore governed, and barred, by the statute of limitations set forth in North Carolina General Statute § 1-15(c).  Section 1-15(c) provides a three-year statute of limitations for claims of "malpractice arising out of the performance of or failure to perform professional services," which begins to run at the occurrence of the defendant's last act giving rise to the cause of action.  N.C. Gen. Stat. § 1-15(c); see Bolton v. Crone, 162 N.C. App. 171, 174, 589 S.E.2d 915, 917 (2004).  Section 1-15(c) also provides a four-year statute of repose.  N.C. Gen. Stat. § 1-15(c) ("[I]n no event shall an action be commenced more than four years from the last act of the defendant giving rise to the cause of action.").  In the alternative, Defendants contend that even if Plaintiffs' negligence claim is not a claim for professional negligence, any general negligence claim would be governed, and barred, by the three-year statute of limitations set forth in North Carolina General Statute § 1-52(5), which accrues at the time of the alleged negligence.

In support of their position, Defendants contend that Defendant Earhart last acted between July 14, 2000 and August 7, 2000, when he prepared the final draft of the Purchase Agreement and sent that draft to Mr. Everitt.  As such, Defendants contend that the statute of limitations under either § 1-15(c) or § 1-52(5) began to run no later than August 7, 2000, and

expired no later than August 7, 2003, over five (5) years before Plaintiffs filed the present action. Defendants further contend that even if the Court applied the four-year statute of repose for purposes of a professional negligence claim, the time for filing expired no later than August 7, 2004, over four (4) years before Plaintiffs filed the present action. Therefore, Defendants contend that Plaintiffs' negligence claim is barred as untimely, and that Defendants are entitled to summary judgment on any such claim.

Plaintiffs, for their part, contend that they are not asserting a claim for professional negligence because Plaintiffs and Defendants did not have the kind of "professional relationship" contemplated by the statute, such as an attorney-client relationship. See Barger v. McCoy Hillard & Parks, 346 N.C. 650, 665, 488 S.E.2d 215, 223-24 (1997). Plaintiffs ultimately agree with Defendants that the three-year statute of limitations set forth in North Carolina General Statute § 1-52(5) governs their claim.[7] However, although Plaintiffs concede that § 1-52(5) is properly applied here, they contend that their asserted claim did not accrue until Plaintiffs' discovery of the allegedly unlawful conduct at issue. Plaintiffs contend that they did not discover the conduct on which this action is based, specifically that Mr. Everitt had

---

[7] The Court notes that Plaintiffs initially contend that North Carolina General Statute § 1-52(16) provides the applicable statutes of limitations. However, § 1-52(16) provides a three-year statute of limitations for personal injury or physical damage to the claimant's property. To the extent that Plaintiffs allege negligence in this case, Plaintiffs do not allege, nor does the evidence support, any claim against Defendants for physical injury to person or property. All claims in this case, whether based on fraud, negligence, or negligent misrepresentation, allege purely economic harm and could not be governed by § 1-52(16). As such, to the extent that Plaintiffs intend to bring an independent claim for negligence, such a claim must be governed by either the professional negligence statute of limitations set forth in North Carolina General Statute § 1-15(c) or the general negligence statute of limitations set forth in § 1-52(5).

instructed Defendant Earhart to include the Termination Contingency in the drafts of the Purchase Agreement, and Defendant Earhart failed to do so, until December 21, 2005. Plaintiffs contend that since they filed this action on December 19, 2008, their claim is timely.

In considering the parties' arguments, the Court notes that it need not resolve the issue of whether Plaintiffs' independent negligence claim is one for professional negligence, governed by North Carolina General Statute § 1-15(c), or general negligence, governed by North Carolina General Statute § 1-52(5), because application of either statute serves to bar an independent negligence claim in this case.[8]  The Court notes that the parties do not dispute that Defendant Earhart last acted with respect to the Purchase Agreement on August 7, 2000, at the latest.  As such, to the extent that Plaintiffs bring a professional negligence claim, Defendants correctly contend that such a claim accrued no later than August 7, 2000, and the time for filing such a claim expired no later than August 7, 2004, under the statute of repose.  Therefore, to the extent that Plaintiffs bring a professional negligence claim, the Court concludes that Plaintiffs' claim, filed on December 19, 2008, is barred as untimely.

Furthermore, to the extent that Plaintiffs bring a general negligence claim, the Court notes that Plaintiffs incorrectly contend that § 1-52(5) provides time for discovery of the alleged conduct prior to accrual.  Under North Carolina law, a general negligence claim governed by § 1-

_____

[8]  Although the Court does not resolve the issue of whether Plaintiffs' independent negligence claim is one for professional negligence, given the finding that Plaintiffs' claim is barred by the applicable statute of limitations, the Court notes that Plaintiffs' allegation that "defendants were negligent in failing to carry out the instructions of their client," (Compl. ¶ 22), would be more appropriately asserted by Defendants' client, Brook Mays, if it had asserted its own malpractice action, rather than by Plaintiffs in this action against Defendants, as opposing counsel in an arms-length transaction.

52(5) accrues at the time the alleged negligence occurred.  <u>Scott & Jones, Inc. v. Carlton Ins.</u> <u>Agency, Inc.</u>, 196 N.C. App. 290, 297-98, 677 S.E.2d 848, 853 (2009) ("A cause of action based on negligence accrues when the wrong giving rise to the right to bring suit is committed, even though the damages at that time be nominal and the injuries cannot be discovered until a later date.").  In making their argument that the time of their discovery triggers their claim, Plaintiffs cite to <u>Jefferson-Pilot Life Insurance Company v. Spencer</u>, 336 N.C. 49, 57, 442 S.E.2d 316, 320 (1994).  However, that case, and the passage quoted by Plaintiffs, set forth the statute of limitations rule for negligent misrepresentation claims, and not for general negligence claims.  <u>Jefferson-Pilot Life Ins. Co.</u>, 336 N.C. at 57, 442 S.E.2d at 320 (finding that a negligent misrepresentation claim "does not accrue until two events occur: First, the claimant suffers harm because of the misrepresentation, and second, the claimant discovers the misrepresentation."); (Pls.' Reply 7).  Therefore, while Plaintiffs correctly contend that their claim for negligent misrepresentation would not accrue until discovery of the alleged misrepresentation, as discussed below, to the extent that the Court is analyzing at this point Plaintiffs assertion of an independent claim for negligence, such a claim accrued no later than August 7, 2000, and the time for filing such a claim expired no later than August 7, 2003.  Therefore, to the extent that Plaintiffs bring an independent claim for negligence, the Court concludes that Plaintiffs' claim, filed on December 19, 2008, is barred as untimely.

Concluding that Plaintiffs' independent negligence claim is time-barred, the Court will not address the merits of any such claim, and the claim will be dismissed.  With regard to the remaining claims of fraud and negligent misrepresentation, the Court notes that Defendants do

not appear to challenge the timeliness of either such claim. However, to the extent that Defendants may be raising such a challenge, the Court concludes that Plaintiffs' claims for fraud and negligent misrepresentation are timely. In making that conclusion, the Court notes that, unlike claims of general negligence, as discussed above, claims of fraud and negligent misrepresentation do not accrue until discovery of the facts constituting the fraud or the negligent misrepresentation. See N.C. Gen. Stat. § 1-52(9) (fraud); Jefferson-Pilot Life Ins. Co., 336 N.C. at 57, 442 S.E.2d at 320 (negligent misrepresentation). In this case, Plaintiffs contend that they did not discover Defendants' allegedly unlawful conduct until Mr. Everitt's deposition in the Prior Action on December 21, 2005, and that they timely filed their Complaint within three-years of such discovery, on December 19, 2008. Without regard to the merits of any such claims, the Court agrees with Plaintiffs on the issue of timeliness, and concludes that Plaintiffs' claims for fraud and negligent misrepresentation are not barred by the statute of limitations. As such, the Court will now address the merits of these remaining tort-based claims.

(b.)  Tort Claims for Fraud

To the extent that Plaintiffs raise a claim for fraud, they must show that there exists a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007) (quoting Ragsdale v. Kennedy, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). Plaintiffs must also show that they relied on the alleged misrepresentations or concealments and that the reliance was reasonable. Id. Moreover, in a case, such as this case, alleging concealment or nondisclosure, Plaintiffs must

first show "that all or some of the defendants had a duty to disclose material information to [them] as silence is fraudulent only when there is a duty to speak." <u>Breeden v. Richmond Cmty. Coll.</u>, 171 F.R.D. 189, 194 (M.D.N.C. 1997) ("Silence, in order to be an actionable fraud, must relate to a material matter known to the party and which it is his legal duty to communicate to the other . . . party, whether the duty arises from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances." (internal quotation and citation omitted)). As such, the Court will address the parties' contentions regarding whether Defendants owed Plaintiffs a duty to disclose information in this case

In an arms-length transaction, as was the sale of Pearson Music, there generally does not exist a "special duty to disclose." <u>Breeden v. Richmond Cmty. Coll.</u>, 171 F.R.D. 189, 194 n.4 (M.D.N.C. 1997). However, a duty to disclose may arise in an arms-length transaction where the defendants took steps to conceal material information from the plaintiffs, which the defendants knew plaintiffs were unable to obtain. <u>See</u> <u>Godfrey v. Res-Care, Inc.</u>, 165 N.C. App. 68, 75, 598 S.E.2d 396, 402 (2004); <u>see also</u> <u>Eli Research, Inc. v. United Communications Group, LLC</u>, 312 F. Supp. 2d 748, 759 (M.D.N.C. 2004) (citing <u>Everts v. Parkinson</u>, 147 N.C. App. 315, 321, 555 S.E.2d 667, 672 (2001)). In the present case, Plaintiffs contend that Defendants "assumed a duty to make a full and fair disclosure" that Defendant Earhart added the Termination Contingency to the final draft of the Purchase Agreement, per Mr. Everitt's instructions, because Defendant Earhart knew such information "would not be known to the Pearsons if he left out the language he was instructed to insert." (Pls.' Br. 11). Defendants contend that Plaintiffs have failed to provide any evidence that Defendants, as opposing counsel

in an arms-length transaction, owed Plaintiffs a duty to disclose under any legal theory, and therefore Defendants are entitled to judgment as a matter of law on Plaintiffs' fraud claim.

In considering the parties' contentions, the Court notes that Plaintiffs do not dispute that when Defendant Earhart sent them copies of the preliminary drafts of the Purchase Agreement, for their review and review by their independent counsel, that Defendant Earhart marked each copy as a "Draft." In addition, Plaintiffs do not dispute that Defendant Earhart indicated in his cover letter for the July 14, 2000 draft that the Purchase Agreement had not yet been reviewed by Mr. Everitt. Curtis Pearson acknowledged in his deposition that Mr. Everitt had the option and ability to make changes to the Purchase Agreement drafts prior to closing, which shows an understanding of the drafting process. (Defs.' Br. Ex. A). Furthermore, the Court notes that it is undisputed that Defendants included the Termination Contingency in the final draft of the Purchase Agreement that Defendants provided to Mr. Everitt for presentation at the closing. The Court further notes that there exists no evidence of any intent to hide the Purchase Agreement from Plaintiffs or otherwise impair Plaintiffs' access to the Purchase Agreement at any time. Moreover, there is no evidence that Defendants knew Plaintiffs would be unable to learn about the Termination Contingency prior to execution of the Purchase Agreement.[9]

Based on the foregoing, the Court concludes that Plaintiffs have failed to present any

---

[9] Indeed, in the Prior Action, the Court found that Plaintiffs had an opportunity to read the Purchase Agreement prior to signing it. In addition, the Court found that the single statement by Mr. Everitt that the final draft reflected the parties' agreement was made without an intent to deceive based on Mr. Everitt's belief that Plaintiffs had received the final draft prior to the closing. In the present case, there is simply no evidence that Brook Mays' counsel, in these circumstances, knew or had any basis to believe that Plaintiffs were not aware of the Termination Contingency.

evidence that would create any genuine issue of fact with respect to whether Defendants, acting

as independent counsel for the opposing side in the arms-length purchase of Pearson Music,

owed Plaintiffs a duty to disclose information regarding the Termination Contingency, including

the fact that Mr. Everitt instructed Defendants to include the Termination Contingency in the

preliminary drafts of the Purchase Agreement, or the fact that Defendants did include the

relevant language in the final draft of the Purchase Agreement. As such, to the extent that

Plaintiffs have attempted to assert an independent claim of fraud against Defendants, the Court

will grant summary judgment in Defendants's favor on any such claim. [10]

(c.)    <u>Tort Claims for Negligent Misrepresentation</u>

To the extent that Plaintiffs raise a claim for negligent misrepresentation, the Court notes

that liability exists under North Carolina law when "[o]ne who, in the course of his business,

profession or employment, or in any other transaction in which he has a pecuniary interest,

supplies false information for the guidance of others in their business transactions, . . . is subject

to liability for pecuniary loss caused to them by their justifiable reliance upon the information,

if he fails to exercise reasonable care or competence in obtaining or communicating the

---

[10] The Court notes that with regard to Plaintiffs' contention that Defendants owed a duty to disclose to Plaintiffs not only the Termination Contingency (which was set out in the Purchase Agreement), but also Mr. Everitt's instructions to Defendant Earhart that he add language to the Purchase Agreement, Defendants raise a legitimate concern that imposing such a duty on Defendants, as attorneys, could create the risk that Defendants, or other attorneys similarly situated to Defendants, would be duty-bound to act in conflict with the standards of professional ethics regarding confidentiality toward their clients. However, given that the Court has found that Defendants did not owe a duty to disclose any information in this case, the Court will not further address the potential confidentiality concerns herein.

information." <u>Kindred of North Carolina, Inc. v. Bond</u>, 160 N.C. App. 90, 100, 584 S.E.2d 846, 853 (2003) (quoting <u>Jordan v. Earthgrains Cos. Inc.</u>, 155 N.C. App. 762, 767, 576 S.E.2d 336, 340 (2003))); <u>see also</u> <u>Raritan River Steel Co. v. Cherry Bekaert & Holland</u>, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) ("The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care.").

As with Plaintiffs' claim for fraud, a claim for negligent misrepresentation requires a showing that Defendants owed Plaintiffs a duty to act in a certain way. As noted throughout this Memorandum Opinion, Plaintiffs contend that the alleged duty to Plaintiffs stemmed from Defendants' agreement to represent Brook Mays and, in doing so, draft the Purchase Agreement for the sale and purchase of Pearson Music. In support of their notion that the professional services contract between Defendants and Brook Mays created a duty of care owed to Plaintiffs, they cite <u>United Leasing Corporation v. Miller</u>, 45 N.C. App. 400, 263 S.E.2d 313 (1980). As noted above, in <u>United Leasing Corporation</u>, the North Carolina Court of Appeals found that an attorney could be held liable in tort to a non-client in the absence of any privity relationship, where the attorney "placed himself in such a relation with another so that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that the other will not be injured." 45 N.C. App. at 406-07, 263 S.E.2d at 317-18. The court then found the defendant attorney liable for negligence where the attorney, in order to induce the non-client plaintiff's participation in a transaction with the attorney's client, furnished a title opinion to the plaintiff, which was found to be defective. <u>Id.</u> at 408, 263 S.E.2d at 318. The court based its

finding of liability on a balancing of various factors: (1) the extent to which the transaction was intended to affect the other person; (2) the foreseeability of harm to him; (3) the degree of certainty that he suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the moral blame attached to such conduct; and (6) the policy of preventing future harm. Id. In the present case, Plaintiffs contend that all of the factors balance in their favor and that they are entitled to summary judgment.

Defendants distinguish United Leasing Corporation, and other North Carolina cases, on the grounds that, based on the factors set forth in United Leasing Corporation, a duty exists in those cases because the defendant attorneys undertook to provide legal advice, services, or opinion directly to the plaintiffs for the purpose of inducing the plaintiffs to enter into a transaction with their clients, thus acting in a way that directly affects the plaintiffs. See United Leasing Corp., 45 N.C. App. at 407-08, 263 S.E.2d at 318 (balancing the stated factors in favor of the plaintiff where "[t]he furnishing of the title opinion [by the defendant attorney] was done for the express purpose of inducing plaintiff to lease the sought equipment. It was directly intended to affect plaintiff"); Title Ins. Co. of Minnesota v. Smith, Debnam, Hibbert and Pahl, 119 N.C. App. 608, 613, 459 S.E.2d 801, 805 (1995) (finding a duty existed where the defendant attorney "furnished the title certificate to plaintiff, a non-client, for the purpose of inducing plaintiff to issue a title policy for the benefit of his client"); see generally Raritan River Steel, 322 N.C. 200, 367 S.E.2d 609 (finding that the plaintiff had stated a claim for negligent misrepresentation where defendant accountant offered non-client plaintiff a financial opinion on which the plaintiff relied to his detriment). Defendants contend that in the present case, they

did not provide Plaintiffs with any legal advice or opinion regarding the Purchase Agreement, or any other matter, but rather simply provided copies of drafted documents to Plaintiffs at the request of their clients. Defendants contend that they "undertook no role other than to represent the interests of Brook Mays and William Everitt, and the Pearson[s] understood this." (Defs.' Br. 12). As such, Defendants contend that they are entitled to summary judgment on any claim for negligent misrepresentation.

In considering Plaintiffs' claim for negligent misrepresentation, the Court notes that Plaintiffs have not pointed to any evidence in the record that Defendants engaged in any conduct intended to directly affect Plaintiffs and induce their assent to the sale of Pearson Music, such as providing an opinion or statement regarding the content or legal consequences of the preliminary or final drafts of the Purchase Agreement. Rather, as stated above, the record evidence indicates that Plaintiffs understood that Defendants represented only the interests of Brook Mays, and that Plaintiffs had their own independent counsel to review the drafted documents throughout the transaction. In addition, the evidence indicates that the only representations made to Plaintiffs regarding the content of the Purchase Agreement came not from Defendants, but from Mr. Everitt, as addressed in the Prior Action. Furthermore, there is no dispute that Defendants were not present at the closing and had no communication with Plaintiffs regarding the final draft once they sent it to Brook Mays for approval. Therefore, based on the evidence presented in this case, and the factors set forth in <u>United Leasing Corporation</u>, the Court concludes that to the extent that Plaintiffs have attempted to assert a claim of negligent misrepresentation against Defendants, Plaintiffs have failed to present any

evidence that would create any genuine issue of fact with respect to whether Defendants owed Plaintiffs a duty of care based on the professional services contract with Brook Mays.[11] As such, the Court will grant summary judgment in favor of Defendants on any such claim.

III.    CONCLUSION

For the reasons set out above, the Court concludes that Defendants are entitled to summary judgment on all of Plaintiffs' claims, and Defendants' Motion for Summary Judgment will therefore be granted. In addition, Plaintiffs' Motion for Partial Summary Judgment will be denied, and this case will be dismissed.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment [Doc. #11] is hereby GRANTED. IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment [Doc. #14] is hereby DENIED. FINALLY IT IS ORDERED that this case is DISMISSED WITH PREJUDICE. A Judgment will be entered contemporaneously herewith.

This, the 29th day of August, 2011.

United States District Judge

---

[11] In addition, the Court notes that to the extent that Plaintiffs base their negligent misrepresentation claim on negligent concealment or omission, as opposed to affirmative misrepresentation, this Court has previously found that no such claim currently exists under North Carolina law. See Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 202-03 (M.D.N.C. 1997).